

1  Robert S. Green (State Bar No. 136183)
   **GREEN WELLING LLP**
2  235 Pine Street, 15th Floor
   San Francisco, California 94104
3  Telephone: (415) 477-6700
   Facsimile: (415) 477-6710
4  Email: rsg@classcounsel.com

5  Marc A. Topaz (mtopaz@sbclasslaw.com)
   Richard A. Maniskas (rmaniskas@sbclasslaw.com)
6  **SCHIFFRIN & BARROWAY, LLP**
   280 King of Prussia Rd.
7  Radnor, PA 19087
   Telephone: (610) 667-7706
8  Facsimile: (610) 667-7056

9  Attorneys for Plaintiff

10

11                      **UNITED STATES DISTRICT COURT**

12                   **NORTHERN DISTRICT OF CALIFORNIA**

13

14  HOWARD DAVISON, Individually and On Behalf
15  of All Others Similarly Situated,              ) Civil Action No. **05 01662**
                                                    )
16                          Plaintiff,              )                          **SBA**
                                                    )
17            vs.                                   ) **CLASS ACTION COMPLAINT**
                                                    )
18  SHARPER IMAGE CORPORATION, RICHARD             )
    THALHEIMER, TRACY WAN, ANTHONY                  )
19  FARRELL, and JEFFREY FORGAN,                    ) **JURY TRIAL DEMANDED**
                                                    )
20                          Defendants.             )

21

22        Plaintiff, Howard Davision ("Plaintiff"), individually and on behalf of all other persons

23  similarly situated, by his undersigned attorneys, for his complaint against defendants, alleges the

24  following based upon personal knowledge as to himself and his own acts, and information and belief

25  as to all other matters, based upon, *inter alia*, the investigation conducted by and through his

26  attorneys, which included, among other things, a review of the defendants' public documents,

27  conference calls and announcements made by defendants, United States Securities and Exchange

28  Commission ("SEC") filings, wire and press releases published by and regarding Sharper Image

Corporation ("Sharper Image" or the "Company") securities analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal class action on behalf of purchasers of the common stock of Sharper Image, between February 5, 2004 and August 4, 2004 (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act, (15 U.S.C. §§ 78j(b) and 78t(a)), and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

3. This Court has jurisdiction over the subject matter of this action pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. § 1331.

4. Venue is proper in this Judicial District pursuant to §27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b). Many of the acts and transactions alleged herein, including the preparation and dissemination of materially false and misleading information, occurred in substantial part in this Judicial District. Additionally, the Company maintains a principal executive office in this Judicial District.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff, Howard Davison, as set forth in the accompanying certification, incorporated by reference herein, purchased Sharper Image common stock at artificially inflated prices during the Class Period and has been damaged thereby.

7.     Defendant Sharper Image is a Delaware corporation with its principal place of business located at 650 Davis Street, San Francisco, California 94111.

8.     Defendant Richard Thalheimer ("Thalheimer") was, at all relevant times, the Company's Chairman, Chief Executive Officer, and Founder.

9.     Defendant Tracy Wan ("Wan") was, at all relevant times, the Company's President and Chief Operating Officer.

10.     Defendant Anthony Farrell ("Farrell") was, at all relevant times, the Company's Senior Vice President of Creative Services.

11.     Defendant Jeffrey Forgan ("Forgan") was, at all relevant times, the Company's Chief Financial Officer.

12.     Defendants Thalheimer, Wan, Farrell, and Forgan are collectively referred to hereinafter as the "Individual Defendants." The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Sharper Image's quarterly reports, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market. Each defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them but not to the public, each of these defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations which were being made were then materially false and misleading. The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

13.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased the common stock of Sharper Image between February 5, 2004 and August 4, 2004, inclusive (the "Class Period") and who were damaged thereby. Excluded from the Class are defendants, the officers and directors

1  of the Company, at all relevant times, members of their immediate families and their legal repre-

2  sentatives, heirs, successors or assigns and any entity in which defendants have or had a controlling

3  interest.

4    14.    The members of the Class are so numerous that joinder of all members is imprac-

5  ticable. Throughout the Class Period, Sharper Image's common stock was actively traded on the

6  NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can

7  only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or

8  thousands of members in the proposed Class. Record owners and other members of the Class may

9  be identified from records maintained by Sharper Image or its transfer agent and may be notified of

10  the pendency of this action by mail, using the form of notice similar to that customarily used in

11  securities class actions.

12    15.    Plaintiff's claims are typical of the claims of the members of the Class as all members

13  of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that

14  is complained of herein.

15    16.    Plaintiff will fairly and adequately protect the interests of the members of the Class

16  and has retained counsel competent and experienced in class and securities litigation.

17    17.    Common questions of law and fact exist as to all members of the Class and

18  predominate over any questions solely affecting individual members of the Class. Among the

19  questions of law and fact common to the Class are:

20    (a)  whether the federal securities laws were violated by defendants' acts as alleged

21  herein;

22    (b)  whether statements made by defendants to the investing public during the Class

23  Period misrepresented material facts about the business, operations and management of Sharper

24  Image; and

25    (c)  to what extent the members of the Class have sustained damages and the proper

26  measure of damages.

27    18.    A class action is superior to all other available methods for the fair and efficient

28  adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the

1    damages suffered by individual Class members may be relatively small, the expense and burden of

2    individual litigation make it impossible for members of the Class to individually redress the wrongs

3    done to them.  There will be no difficulty in the management of this action as a class action.

4                                **SUBSTANTIVE ALLEGATIONS**

5                                        **Background**

6           19.     Sharper Image is a specialty retailer of products in the electronics, recreation and

7    fitness, personal care, houseware, travel, toy, gifts and other categories.  The Sharper Image designs

8    and develops its Sharper Image Design products, while Sharper Image branded products are

9    generally designed by the Company with third parties.  It markets and sells its merchandise primarily

10   through three integrated sales channels:  The Sharper Image stores; The Sharper Image catalog,

11   which includes revenue from all direct marketing activities and television infomercials, and the

12   Internet.

13                          **Materially False And Misleading**
                     **Statements Issued During The Class Period**

14

15          20.     On February 5, 2004, the Company issued a press release entitled "Sharper Image

16   Reports January 21 Percent Increase in Comparable Store Sales, Total Company Sales Increase 40

17   Percent, Raises Earnings Guidance."  Therein, the Company stated:

18           For the fiscal year ended January 31, 2004, total Company sales
             increased 26 percent to $630.1 million from last year's $498.7
19           million which was a 32 percent increase in [sic] over the prior year.
             Total store sales increased 29 percent to $379.3 million from $293.8
20           million in the prior year; comparable store sales increased 15 percent.
             Catalog sales increased 15 percent to $155.7 million from the last
21           year's $135.7 million. Internet sales increased 37 percent to $95.1
             million from last year's $69.2 million.
22
             Related to the growth of our corporate incentive sales our January,
23           fourth quarter and fiscal year's sales for current periods and
             comparable prior periods include reclassification between sales and
24           related cost of good sold for certain corporate incentive program
             allowances. The reclassification does not affect net income for any
25           period.

26           Operational discussion

27           "We are pleased with the high growth of January and fourth quarter
             sales," said Richard Thalheimer, founder, chairman and chief
28           executive  officer.  "The  outstanding  increase  in  sales  for  the

high-volume months of November and December continued through the end of January; particularly outstanding was January's comparable store sales increase of 21 percent on top of last January's 37 percent comparable store sales increase," Mr. Thalheimer continued.

"We had excellent sales momentum in all our sales channels -- stores, catalog, Internet, wholesale and corporate incentive business. Our Sharper Image proprietary and brand products proved appealing to a broad customer base across diverse product categories at popular price points. We built on our strong sales trend earlier in the fourth quarter with increased multimedia advertising and our inventory was well positioned to support the high growth," said Mr. Thalheimer.

* * *

"We are increasing our fourth quarter guidance to $1.38 to $1.40 earnings per diluted share; this is higher than our previous guidance of $1.34 to $1.38 earnings per diluted share. The improved guidance is a 10 percent mid-point increase over 2002's fourth quarter earnings of $1.26 per diluted share. Our guidance for the full year is increasing to $1.63 to $1.65 earnings per diluted share, a 36 percent mid-point increase over last year's $1.21 earnings per diluted share. Our net earnings (based on the mid-point of our guidance) are expected to increase 34 percent for the fourth quarter and 58 percent for the year -- greater percentage increases than the earnings per share because of the increased number of shares outstanding resulting from our May 2003 follow-on offering.

21.     On April 15, 2004, Sharper Image filed its annual report with the SEC on Form 10-K. The Company's Form 10-K was signed by defendants Thalheimer and Forgan. The Company's Form 10-K, under the section entitled "Management's Discussion and Analysis of Results of Operations and Financial Condition," Sharper Image stated:

Overview

The Sharper Image is a multi-channel specialty retailer of innovative, high quality products that are useful and entertaining and are designed to make life easier and more enjoyable. Our unique assortment of products offers design, creativity and technological innovation, in addition to fun and entertainment. We market and sell our merchandise primarily through three integrated sales channels: The Sharper Image stores, The Sharper Image catalog, which includes revenue from all direct marketing activities and television infomercials, and the Internet. We also market to other businesses through our corporate sales, where revenues are recorded in each of our three sales channels and wholesale operations.

Our total revenues increased 26.0% to $647.5 million in the year ended January 31, 2004 (fiscal 2003) from $513.8 million in the year ended January 31, 2003 (fiscal 2002). This increase was due

primarily to the popularity of our Sharper Image Design and Sharper Image branded products, including our air purification line of products, the opening of 22 net new stores, a comparable store sales increase of 15.3%, and an increase in our multimedia advertising which we believe increased sales in all selling channels.

* * *

Revenue recognition. We recognize revenue at the point of sale at our retail stores and at the time of customer receipt for our catalog and direct marketing sales, including the Internet. We recognize revenue for sales to resellers of sales made on a wholesale basis when the products are shipped, which is the time title passes to the purchaser. We record estimated reductions to revenue for customer returns based on our historical return rates. Revenues are recorded net of sale discounts and other rebates and incentives offered to customers. Deferred revenue represents merchandise certificates, gift cards and rewards cards outstanding and unfilled cash orders at the end of the fiscal period. Delivery revenue is recognized at the time of customer receipt.

Merchandise inventories. We write down inventory for estimated obsolescence on unmarketable inventory equal to the difference between the cost of inventory and the estimated market value based upon assumptions about future demand and market conditions. If actual market conditions are less favorable than those projected by management, additional inventory writedowns may be required.

Accounts receivable. Counterparties to our accounts receivable include credit card issuers, corporate marketing incentive customers, wholesale customers, installment plan customers for purchases of a limited number of products, merchandise vendors, and landlords from whom we expect to receive amounts due. We record an allowance for credit losses based on estimates of customers' ability to pay. If the financial condition of our customers were to deteriorate, additional allowances may be required.

Store closure reserves. We record reserves for closed stores based on future lease commitments, anticipated future subleases of properties and current risk-free interest rates. If interest rates or the real estate leasing markets change, additional reserves may be required.

Other accounting estimates inherent in the preparation of our financial statements include estimates associated with our evaluation of the recoverability of deferred tax assets as well as those used in the determination of liabilities related to litigation, product liability, and taxation. Various assumptions and other factors underlie the determination of these significant estimates. The process of determining significant estimates is fact specific and takes into account factors such as historical experience, current and expected economic conditions and product mix. We constantly re-evaluate these significant factors and make adjustments where facts and circumstances dictate. Historically, actual results have not significantly deviated from those determined using the estimates described above.

As discussed in the Notes to the Financial Statements, we are involved in litigation incidental to our business, the disposition of which is expected to have no material effect on our financial position or results of operations. It is possible, however, that future results of operations for any particular quarterly or annual period could be materially affected by changes in our assumptions related to these proceedings. We accrue our best estimates of the probable cost for the resolution of legal claims. Such estimates are developed in consultation with outside counsel handling these matters and are based upon a combination of litigation and settlement strategies. To the extent additional information arises or our strategies change, it is possible that our best estimates of our probable liability in these matters may change.

22. On May 20, 2004, Sharper Image issued a press release entitled "Sharper Image Reports First Quarter Record Revenues and Net Earnings, Earnings Per Share Increase 160 Percent, Revenues Increase 34 Percent." Therein, the Company stated:

Sharper Image Corporation (Nasdaq:SHRP) today reported record revenues and earnings for the first quarter of its fiscal year ending January 31, 2005. The Company said first quarter total revenues increased 34 percent and first quarter net earnings per diluted share increased 160 percent to $0.13 from the prior's years $0.05 per diluted share.

First-quarter highlights

-- Record first-quarter earnings of $0.13 per diluted share, a 160 percent increase
-- Total revenues increase 34 percent
-- Comparable store sales increase eight percent
-- Total store sales increase 26 percent
-- Catalog/direct marketing sales increase 40 percent
-- Internet sales increase 58 percent

For the fiscal first quarter ended April 30, 2004, net earnings of $0.13 per diluted share, or $2.1 million, is a 160 percent increase over last year's first quarter earnings of $0.05 per diluted share and a 211 percent increase in net earnings over last year's first quarter net earnings of $0.7 million. The total net earnings increase is greater than the per share increase because of the additional 2.1 million shares issued in the May 2003 follow-on offering. Company revenues increased 34 percent to $156.4 million from last year's $116.3 million. Total store sales increased 26 percent to $81.4 million from $64.8 million in the prior first quarter; comparable store sales increased eight percent. Catalog/direct marketing sales increased 40 percent to $45.1 million from last year's first quarter of $32.2 million. Internet sales increased 58 percent to $26.2 million from last year's first quarter of $16.6 million.

Operations discussion

"We are pleased with the performance that resulted in the first quarter record revenues and net earnings," said Richard Thalheimer, founder, chairman and chief executive officer. "The eight percent comparable store sales increase is very impressive considering it is on top of last year's first quarter 18 percent comparable store sales gain. Our Internet sales and catalog/direct marketing sales (which include wholesale) each enjoyed stellar first-quarter performance, with Internet sales increasing 58 percent and catalog/direct marketing sales increasing 40 percent.

"Our business continues to be driven principally by Sharper Image Design proprietary products and Sharper Image brand merchandise. The Sharper Image brand has proved very popular among a growing consumer base, across a diverse range of categories and price points, supported by aggressive multichannel advertising," Mr. Thalheimer stated. "We opened five new stores in the first quarter and we are on track to achieve our goal of 15 to 20 percent new store unit growth, with a target of 26 stores opened during the fiscal year," Mr. Thalheimer further stated.

"Our record first quarter earnings per share of $0.13 per diluted share is a great start to our fiscal year. We finished the quarter with a strong balance sheet; we have no long term debt and our inventory levels are appropriate to support our increased sales and growing retail store base.

"Our earnings guidance for the second quarter is a range of $0.09 to $0.11 per diluted share, a significant increase over last year's second quarter earnings of $0.05 per diluted share. The earnings per share guidance is based upon an anticipated low-single digit comparable store sales increase, which is on top of last year's second quarter comparable store sales increase of 14 percent; a gross margin rate improvement of 30 to 50 basis points; improved operating expense leverage of 30 to 40 basis points; and continued strong multimedia advertising. Our earnings per share guidance for the full year is a record $2.00 to $2.04 per diluted share. The midpoint of our full year guidance is a 22 percent increase over last year's $1.65 per diluted share," Mr. Thalheimer concluded.

23.    On July 8, 2004, Sharper Image issued a press release "Sharper Image Reports June Total Company Sales Increase 23 Percent, Total Store Sales Increase 18 Percent, Comparable Store Sales Increase Two Percent, Catalog Sales Increase 42 Percent and Internet Sales Increase 17 Percent." Therein, the Company stated:

Sharper Image Corporation (Nasdaq:SHRP) today reported sales for the month of June and the first five months of the fiscal year ending January 31, 2005.

June sales

-- Total Company sales increase 23 percent
-- Total store sales increase 18 percent
-- Comparable store sales increase two percent
-- Catalog/direct marketing sales, including wholesale, increase 42 percent
-- Internet sales increase 17 percent

For the calendar month ended June 30, 2004, total Company sales increased 23 percent to $50.8 million from last June's $41.2 million; the June 2003 increase was 28 percent. Total store sales increased 18 percent to $30.6 million from last June's $25.9 million. Comparable store sales increased two percent; the June 2003 comparable store sales increase was 14 percent. Total catalog/direct marketing sales increased 42 percent to $13.3 million from last June's $9.3 million; the June 2003 increase was 19 percent. Internet sales increased 17 percent to $7.0 million from last June's $6.0 million; the June 2003 increase was 54 percent.

*\*\**

Operational discussion

"We're pleased with our record sales performance for the important Father's day and graduation gift-giving season," said Richard Thalheimer, founder, chairman and chief executive officer. "The June's sales increases come on top of excellent increases in the prior year. Total Company June sales were up 23 percent on top of the prior June's 28 percent gain; catalog/direct marketing sales (which includes TV infomercial and wholesale sales) were up 42 percent on top of last June's 19 percent; Internet sales were up a substantial 17 percent over a huge 54 percent increase last June," noted Mr. Thalheimer. "The wholesale component of catalog sales/direct marketing enjoyed another outstanding month. June's comparable store sales increase of two percent was on top of the prior year's excellent 14 percent comparable store increase.

"The new Sharper Image stores opened within the last 12 months are performing extremely well," said Mr. Thalheimer. "They have proven to be successful very quickly and have, on average, made a positive direct contribution by their first quarter of operation. In June, we opened one new store, at Perimeter Mall, Atlanta, Georgia, increasing the new stores open fiscal year-to-date to seven. We expect to achieve our goal of 15 to 20 percent new store unit growth, with a plan to open 26 new stores during this fiscal year," Mr. Thalheimer stated.

"Sales volume and growth in new stores, as well as in our other sales channels, including our wholesale business, continues to be comprised mainly of Sharper Image Design proprietary and Sharper Image brand products; these exclusive products account for more than 70 percent of our sales," Mr. Thalheimer said. "Sharper Image brand merchandise has proven to be widely appealing to an ever-growing consumer base, across a diverse range of products for the home, office, travel, play and personal care, and at prices that

1    represent an excellent value to the customer," Mr. Thalheimer concluded.

2

3    24.    The statements contained in ¶¶ 20-24 were materially false and misleading when

4    made because defendants failed to disclose or indicate the following: (1) that growth in the

5    Company's wholesale channels was causing a slow down in sales at Sharper Image's

6    catalog/Internet and retail stores; (2) that the demand for the Company's key product - the Ionic

7    Breeze, family of air purifiers- had dramatically slowed; (3) that the Company lacked new products

8    to sell to consumers which caused the Company to overly rely on Ionic Breeze sales to meet

9    forecasts; (4) that margins associated with the Ionic Breeze were materially impaired, due to limited

10   availability of infomercial time and the higher costs associated therewith; and (5) as a consequence,

11   of the above, the Company's projections lacked in all reasonable basis.

12                          **The Truth Begins to Emerge**

13   25.    On August 5, 2004, Sharper Image issued a press release entitled "Sharper Image

14   Reports July Total Company Sales Increased 18 Percent." Therein, the Company stated:

15        Sharper Image (Nasdaq:SHRP)

16        -- Total Store Sales Increased 15 Percent, Comparable Store Sales
          Were Equal to Last Year, Catalog Sales Increased 27 Percent and
17        Internet Sales Increased 14 Percent; Revises Guidance for Second
          Quarter and Full Year
18
          Sharper Image Corporation (Nasdaq:SHRP) today reported sales for
19        the month of July, second quarter and the first six months of the fiscal
          year ending January 31, 2005. The 18 percent July sales increase was
20        on top of last July's 20 percent increase.

21        July sales

22        -- Total Company sales increased 18 percent
          -- Total store sales increased 15 percent
23        -- Comparable store sales were equal to last year
          -- Catalog/direct marketing sales, including wholesale, increased
24        27 percent
          -- Internet sales increased 14 percent
25
          For the calendar month ended July 31, 2004, total Company sales
26        increased 18 percent to $43.2 million from last July's $36.7 million;
          the July 2003 increase was 20 percent. Total store sales increased 15
27        percent to $25.1 million from last July's $21.8 million. Comparable
          store sales were equal to last year; the July 2003 comparable store
28        sales increase was 10 percent. Total catalog/direct marketing sales

increased 27 percent to $11.9 million from last July's $9.3 million; the July 2003 catalog/direct marketing sales increase were equal to the prior year. Internet sales increased 14 percent to $6.2 million from last July's $5.5 million; the July 2003 increase was 57 percent.

Second quarter sales

-- Total Company sales increased 20 percent
-- Total store sales increased 17 percent
-- Comparable store sales increased one percent
-- Catalog/direct marketing sales, including wholesale, increased 28 percent
-- Internet sales increased 14 percent

For the three months ended July 31, 2004, total Company sales increased 20 percent to $145.4 million from last year's second quarter of $121.5 million; the second quarter 2003 increase was 24 percent. Total store sales increased 17 percent to $86.0 million from last year's second quarter of $73.2 million. Comparable store sales increased one percent; the second quarter 2003 comparable store sales increase was 14 percent. Total catalog/direct marketing sales increased 28 percent to $39.0 million from last year's $30.4 million; last year's second quarter increase was 11 percent. Internet sales increased 14 percent to $20.4 million from last year's second quarter $17.9 million; the second quarter 2003 increase was 47 percent.

Year-to-date sales

-- Total Company sales increase 27 percent
-- Total store sales increase 21 percent
-- Comparable store sales increase four percent
-- Catalog/direct marketing sales, including wholesale, increase 34 percent
-- Internet sales increase 35 percent

For the six months ending July 31, 2004, total Company sales increased 27 percent to $298.1 million from last year's $235.1 million; the 2003 year-to-date increase was 24 percent. Total store sales increased 21 percent to $167.3 million from $138.0 million in the prior year. Comparable store sales increased four percent; the 2003 year-to-date same-store sales increase was 15 percent. Total catalog/direct marketing sales increased 34 percent to $84.1 million from last year's $62.5 million; the 2003 year-to-date increase was 10 percent. Internet sales increased 35 percent to $46.7 million from last year's $34.5 million; the 2003 year-to-date increase was 44 percent.

Operational discussion

"While our July's sales increases come on top of excellent increases in the prior year, they were below our expectations," said Richard Thalheimer, founder, chairman and chief executive officer. "Total Company July sales were up 18 percent on top of the prior July's 20 percent gain; catalog/direct marketing sales (which includes TV infomercial and wholesale sales) were up 27 percent over last year's flat sales increase; Internet sales were up 14 percent over a

huge 57 percent increase last July," noted Mr. Thalheimer. "On a preliminary basis the Company believes that sales and gross margin were adversely impacted by less than anticipated television infomercial media availability in July, combined with generally lower sales returns on direct response media spending and lighter customer traffic at retail locations. We believe that increased travel, good summer weather and competition generally from election related media spending contributed to this lower return on our advertising expenditures."

In July, we opened eight new stores: Burlingame, California; Deerfield Towne Center, Masson, Ohio; Jefferson Pointe, Fort Wayne, Indiana; Rockaway Townsquare, Rockaway, New Jersey; North Point Mall, Alpharetta, Georgia; North East Mall, Hurst and Southlake Town Square, Southlake, both in Texas and Belmar, Lakewood, Colorado; increasing the new stores open fiscal year-to-date to 15. We expect to achieve our goal of 15 to 20 percent new store unit growth, with a plan to open 26 new stores during this fiscal year," Mr. Thalheimer stated. "We continue to have good new product introductions and we are confident of the strength of our multi-channel sales strategy.

"We are updating our earnings guidance for the second quarter to a range of $0.03 to $0.05 per diluted share. This compares with last year's second quarter earnings of $0.05 per diluted share. The earnings per share guidance is based on our lower than expected sales for the second quarter in our retail channels resulting in less productive advertising and lower gross margin rate. Based on our preliminary second quarter results, we believe it is also prudent to lower our full year earnings per share guidance to $1.83 to $1.87 per diluted share, a decrease from our previous full year guidance of $2.00 to $2.04 per diluted share. The midpoint of our revised full year guidance would be record annual earnings and a 12 percent increase over last year's $1.65 per diluted share," Mr. Thalheimer concluded.

26.     News of this shocked the market.  Shares of Sharper Image fell $6.06 per share or 23.77 percent, on August 5, 2004, to close at $19.43 per share.

## POST CLASS STATEMENTS

27.     On November 18, 2004, the Company issued a press release entitled "Sharper Image Confirms Earnings Guidance for Fourth Quarter and Fiscal Year 2004; Announces Resignation of Chief Financial Officer."  Therein, the Company stated:

Sharper Image Corporation (NASDAQ:SHRP) today confirmed earnings guidance for the fourth quarter and fiscal year ending January 31, 2005, and announced the resignation of the chief financial officer.

The Company's guidance for the fourth quarter is $1.33 to $1.38 net earnings per diluted share, compared with last year's fourth quarter

net earnings of $1.40 per diluted share. The guidance for fourth quarter's earnings per diluted share is based on the following assumptions: total Company revenues to increase 15 to 18 percent, comparable store sales to decrease in mid-single digit range with the November comparable store sales with the largest decrease; catalog circulation increasing low double-digits and catalog page circulation increasing approximately 15 percent; advertising expenses increasing slightly faster than sales increases; merchandise gross margin decreasing 200 basis points and overall operating expenses at approximately 43 percent of revenue.

The revised Company guidance for the fiscal year is $1.29 to $1.34 net earnings per diluted share, compared to last year's $1.65 per diluted share.

Mr. Richard Thalheimer, founder, chair and chief executive officer, announced during today's conference call that the Company's executive vice president, chief financial officer, Mr. Jeff Forgan, has tendered his resignation from the company in order to pursue personal interests. Mr. Forgan will remain with the Company through the holidays in order to facilitate a smooth transition. Mr. Thalheimer expressed his appreciation for Mr. Forgan's contributions and wished him and his family well. The company will commence a search for his replacement.

28.     On April 8, 2005, the Company issued a press release entitled "Sharper Image Completes Accounting Review, Expects Non-Cash Adjustments, Updates Guidance for Fiscal Year 2004." Therein, the Company stated:

Sharper Image Corporation (NASDAQ:SHRP) announced today that, as disclosed in its March 15, 2005 press release, the Company has re-evaluated its lease accounting practices. Like many other public companies, the Company will correct the way it accounts for its leases, specifically the accounting for "rent holidays."

Before this correction, Sharper Image Corporation recognized the straight-line expense for leases beginning on the commencement date of the lease; this had the effect of excluding the stores' construction period from the total time over which the Company expensed rent. As a result, the Company has corrected its accounting to include the construction period in determining its straight-line rent and to capitalize rent expense during the stores' construction period and amortize that capitalized rent over the lease period or the life of the leasehold improvement, whichever is shorter.

In addition, as part of the Company's self-assessment and self-testing of its internal controls over financial reporting under Section 404 of the Sarbanes-Oxley Act of 2002, management has identified an error in accounts within accounts payable as reported in its prior financial statements. The error occurred in certain calculations and missing product cost increases relating to inventory that has been sold through. This resulted in an understatement of accounts payable and

an overstatement of net income, as well as a corresponding overstatement of stockholders' equity, for each of the periods presented.

Management and the Audit Committee of the Board of Directors of the Company concluded on April 4, 2005 that the Company's financial statements in the first three interim quarters of the fiscal year ended January 31, 2005, and in each of the four quarters and the fiscal year ended January 31, 2004, and the fiscal year ended January 31, 2003, should be restated to correct its accounting for the matters described above. The Company's previously filed financial statements and related independent audit report should no longer be relied upon. The Company currently believes that these adjustments will reduce net income (on an after-tax basis) by approximately $500 thousand for the first nine months of the fiscal year ended January 31, 2005; by approximately $2.0 million for fiscal year ended January 31, 2004; and by approximately $700 thousand for fiscal year ended January 31, 2003. The Company's beginning retained earnings will be decreased by approximately $1.3 million for the cumulative adjustment of all periods prior to fiscal year ended January 31, 2003.

These adjustments will have no impact on cash, revenues or comparable store sales.

The Company has discussed its conclusions with its independent registered public accounting firm, Deloitte & Touche LLP. The Company is evaluating whether or not this restatement represents a material weakness as defined by the Public Company Accounting Oversight Board's Auditing Standard No.2. The Company anticipates filing a SEC Form 12b-25 requesting an automatic 15 day filing extension and expects a timely filing of its Annual Report on Form 10-K.

With the impact of these adjustments, the Company currently believes that its earnings for the fiscal year ended January 31, 2005, will fall at the lower end of its previously announced range of earnings of $0.90 to $0.95 per diluted share.

## UNDISCLOSED ADVERSE FACTS

29.    The market for Sharper Image's common stock was open, well-developed and efficient at all relevant times.  As a result of these materially false and misleading statements and failures to disclose, Sharper Image's common stock traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired Sharper Image common stock relying upon the integrity of the market price of Sharper Image's common stock and market information relating to Sharper Image, and have been damaged thereby.

30.    During the Class Period, defendants materially misled the investing public, thereby inflating the price of Sharper Image's common stock, by publicly issuing false and misleading

1  statements and omitting to disclose material facts necessary to make defendants' statements, as set

2  forth herein, not false and misleading. Said statements and omissions were materially false and

3  misleading in that they failed to disclose material adverse information and misrepresented the truth

4  about the Company, its business and operations, as alleged herein.

5      31.    At all relevant times, the material misrepresentations and omissions particularized

6  in this Complaint directly or proximately caused or were a substantial contributing cause of the

7  damages sustained by Plaintiff and other members of the Class. As described herein, during the

8  Class Period, defendants made or caused to be made a series of materially false or misleading

9  statements about Sharper Image's business, prospects and operations. These material misstatements

10  and omissions had the cause and effect of creating in the market an unrealistically positive

11  assessment of Sharper Image and its business, prospects and operations, thus causing the Company's

12  common stock to be overvalued and artificially inflated at all relevant times. Defendants' materially

13  false and misleading statements during the Class Period resulted in Plaintiff and other members of

14  the Class purchasing the Company's common stock at artificially inflated prices, thus causing the

15  damages complained of herein.

16                    **ADDITIONAL SCIENTER ALLEGATIONS**

17      32.    As alleged herein, defendants acted with scienter in that defendants knew that the

18  public documents and statements issued or disseminated in the name of the Company were

19  materially false and misleading; knew that such statements or documents would be issued or

20  disseminated to the investing public; and knowingly and substantially participated or acquiesced in

21  the issuance or dissemination of such statements or documents as primary violations of the federal

22  securities laws. As set forth elsewhere herein in detail, defendants, by virtue of their receipt of

23  information reflecting the true facts regarding Sharper Image, their control over, and/or receipt

24  and/or modification of Sharper Image allegedly materially misleading misstatements and/or their

25  associations with the Company which made them privy to confidential proprietary information

26  concerning Sharper Image, participated in the fraudulent scheme alleged herein.

27      33.    Defendants knew and/or recklessly disregarded the falsity and misleading nature of

28  the information which they caused to be disseminated to the investing public. The ongoing

1  fraudulent scheme described in this complaint could not have been perpetrated over a substantial

2  period of time, as has occurred, without the knowledge and complicity of the personnel at the

3  highest level of the Company, including the Individual Defendants.

4      34.     During the Class Period and with the Company's stock trading at artificially inflated

5  prices the Individual Defendants sold 634,000 for gross proceeds of nearly $19 million.   As

6  evidenced by the following chart:

| | Date | # of Shares/Price | Proceeds |
|---|---|---|---|
| Richard Thalheimer | 02/13/2004 | 19,000 @ $35.609 | $676,571 |
| | 02/13/2004 | 50,000 @ $35.000 | $1,750,000 |
| | 02/17/2004 | 23,917 @ $35.609 | $851,660.5 |
| | 02/18/2004 | 50,000 @ $35.000 | $1,750,000 |
| | 02/18/2004 | 32,073 @ $35.19 | $1,128,648.87 |
| | 02/18/2004 | 50,000 @ $35.939 | $1,796,950 |
| | 02/19/2004 | 20,000 @ $36.050 | $721,000 |
| | 02/19/2004 | 5,070 @ $36.200 | $183,534 |
| | 02/25/2004 | 19,940 @ $35.404 | $705,955.76 |
| | 04/14/2004 | 24,000 @ $32.000 | $768,000.00 |
| | 04/14/2004 | 20,000 @ $32.840 | $656,800 |
| | 04/15/2004 | 18,200 @ $32.817 | $597,269 |
| | 04/16/2004 | 5,000 @ $32.900 | $164,500 |
| | 05/24/2004 | 50,000 @ $26.594 | $1,329,700 |
| | 05/25/2004 | 50,000 @ $26.962 | $1,348,100 |
| | 06/08/2004 | 20,000 @ $29.000 | $580,000.00 |
| | 06/09/2004 | 22,000 @ $29.000 | $638,000 |
| | 06/09/2004 | 40,000 @ $29.205 | $1,168,200 |
| | 07/13/2004 | 5,000 @ $31.078 | $155,390 |
| | 07/20/2004 | 2,500 @ $29.050 | $72,625 |
| | 07/20/2004 | 2,500 @ $29.050 | $72,625 |
| | *Total Proceeds: 551,200* | | *Total Proceeds: $17,115,529* |
| Anthony Farrell | 02/11/2004 | 12,200 @ $35.45 | $432,490 |
| | 02/13/2004 | 12,200 @ $35.32 | $430,904 |
| | *Total Proceeds 24,400* | | *Total Proceeds: $863,394* |
| Jeffrey Forgan | 04/15/2004 | 11,400 @ $32.75 | $373,350 |
| | 06/04/2004 | 17,000 @ $28.07 | $477,190 |
| | *Total Proceeds: 28,400* | | *Total Proceeds: $850,540* |
| Tracy Wan | 06/09/2004 | 30,000 @ $29.355 | $880,650 |
| | *Total Shares: 30,000* | | *Total Proceeds: $880,650* |

**Applicability Of Presumption Of Reliance:**
**Fraud-On-The-Market Doctrine**

35.     At all relevant times, the market for Sharper Image common stock was an efficient market for the following reasons, among others:

(a)  Sharper Image stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)  As a regulated issuer, Sharper Image filed periodic public reports with the SEC and the NASDAQ;

(c)  Sharper Image  regularly communicated with public investors <u>via</u> established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)  Sharper Image was followed by several securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

36.     As a result of the foregoing, the market for Sharper Image common stock promptly digested current information regarding Sharper Image from all publicly-available sources and reflected such information in Sharper Image stock price. Under these circumstances, all purchasers of Sharper Image common stock during the Class Period suffered similar injury through their purchase of Sharper Image common stock at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

37.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made.  To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ

1   materially from those in the purportedly forward-looking statements.  Alternatively, to the extent

2   that the statutory safe harbor does apply to any forward-looking statements pleaded herein,

3   defendants are liable for those false forward-looking statements because at the time each of those

4   forward-looking statements was made, the particular speaker knew that the particular forward-

5   looking statement was false, and/or the forward-looking statement was authorized and/or approved

6   by an executive officer of Sharper Image who knew that those statements were false when made.

7                                    **FIRST CLAIM**
                            **Violation Of Section 10(b) Of**
8                    **The Exchange Act Against And Rule 10b-5**
                     **Promulgated Thereunder Against All Defendants**
9

10         38.     Plaintiff repeats and realleges each and every allegation contained above as if fully

11   set forth herein.

12         39.     During the Class Period, defendants carried out a plan, scheme and course of conduct

13   which was intended to and, throughout the Class Period, did: (i) deceive the investing public,

14   including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other

15   members of the Class to purchase Sharper Image common stock at artificially inflated prices.  In

16   furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took

17   the actions set forth herein.

18         40.     Defendants (a) employed devices, schemes, and artifices to defraud; (b) made untrue

19   statements of material fact and/or omitted to state material facts necessary to make the statements

20   not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud

21   and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially

22   high market prices for Sharper Image common stock in violation of Section 10(b) of the Exchange

23   Act and Rule 10b-5. All defendants are sued either as primary participants in the wrongful and

24   illegal conduct charged herein or as controlling persons as alleged below.

25         41.     Defendants, individually and in concert, directly and indirectly, by the use, means

26   or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a

27   continuous course of conduct to conceal adverse material information about the business, operations

28   and future prospects of Sharper Image as specified herein.

42.     These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Sharper Image value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Sharper Image and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of Sharper Image common stock during the Class Period.

43.     Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of his responsibilities and activities as a senior officer and/or director of the Company was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

44.     The defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Sharper Image's operating condition and future business prospects from the investing public and supporting the artificially inflated price of its common stock. As demonstrated by defendants' overstatements and misstatements of the Company's business, operations and

1    earnings throughout the Class Period, defendants, if they did not have actual knowledge of the

2    misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by

3    deliberately refraining from taking those steps necessary to discover whether those statements were

4    false or misleading.

5        45.    As a result of the dissemination of the materially false and misleading information

6    and failure to disclose material facts, as set forth above, the market price of Sharper Image common

7    stock was artificially inflated during the Class Period.  In ignorance of the fact that market prices

8    of Sharper Image's publicly-traded common stock were artificially inflated, and relying directly or

9    indirectly on the false and misleading statements made by defendants, or upon the integrity of the

10    market in which the common stock trades, and/or on the absence of material adverse information

11    that was known to or recklessly disregarded by defendants but not disclosed in public statements by

12    defendants during the Class Period, Plaintiff and the other members of the Class acquired Sharper

13    Image common stock during the Class Period at artificially high prices and were damaged thereby.

14        46.    At the time of said misrepresentations and omissions, Plaintiff and other members

15    of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other

16    members of the Class and the marketplace known the truth regarding the problems that Sharper

17    Image was experiencing, which were not disclosed by defendants, Plaintiff and other members of

18    the Class would not have purchased or otherwise acquired their Sharper Image common stock, or,

19    if they had acquired such common stock during the Class Period, they would not have done so at the

20    artificially inflated prices which they paid.

21        47.    By virtue of the foregoing, defendants have violated Section 10(b) of the Exchange

22    Act, and Rule 10b-5 promulgated thereunder.

23        48.    As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the

24    other members of the Class suffered damages in connection with their respective purchases and sales

25    of the Company's common stock during the Class Period.

26

27

28

**SECOND CLAIM**
**Violation Of Section 20(a) Of**
**The Exchange Act Against the Individual Defendants**

49.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

50.    The Individual Defendants acted as controlling persons of Sharper Image within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contend are false and misleading.  The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

51.    In particular, each of these defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

52.    As set forth above, Sharper Image and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.  By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

1      **WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

2              (a) Determining that this action is a proper class action, designating Plaintiff as Lead

3      Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil

4      Procedure and Plaintiff's counsel as Lead Counsel;

5              (b) Awarding compensatory damages in favor of Plaintiff and the other Class

6      members against all defendants, jointly and severally, for all damages sustained as a result of

7      defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

8              (c) Awarding Plaintiff and the Class their reasonable costs and expenses incurred

9      in this action, including counsel fees and expert fees; and

10             (d) Such other and further relief as the Court may deem just and proper.

11                              **JURY TRIAL DEMANDED**

12     Plaintiff hereby demands a trial by jury.

13     DATED: April 21, 2005                    **GREEN WELLING LLP**

14

15                                              By: _____
                                                    Robert S. Green
16

17                                              235 Pine Street, 15th Floor
                                                San Francisco, California 94104
                                                Telephone: (415) 477-6700
18                                              Facsimile: (415) 477-6710

19                                              Marc A. Topaz
                                                Richard A. Maniskas
20                                              **SCHIFFRIN & BARROWAY, LLP**
                                                280 King of Prussia Rd.
21                                              Radnor, PA 19087
                                                Telephone: (610) 667-7706
22                                              Facsimile: (610) 667-7056

23                                              Attorneys for Plaintiff

24

25

26

27

28

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

I, Howard Davison (Plaintiff) declares, as to the claims asserted under the federal securities laws, that:

1. Plaintiff has reviewed the Complaint and retains Schiffrin & Barroway, LLP and such co-counsel it deems appropriate to associate with to pursue such action on a contingent fee basis.

2. Plaintiff did not purchase the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in any private action.

3. Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4. Plaintiff's transactions in the Sharper Image Corporation(Nasdaq:SHRP) security that is the subject of this action during the Class Period are as follows:

| No. of Shares | Buy/Sell | Date | Price Per Share |
|---|---|---|---|
| 200 | BUY | 4/20/2004 | $32.575 |
| 200 | SOLD | 8/18/2004 | $17.20535 |
| | | | |

List additional transactions on a separate sheet of paper, if necessary.

5. During the three years prior to the date of this Certification, Plaintiff has sought to serve or served as a representative party for a class in the following actions filed under the federal securities laws: N/A

6. Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this _20TH_ day of _APRIL_, 2005.

**HOWARD DAVISON**